# 14-1160-CV

# United States Court of Appeals

*for the*

# Second Circuit

PEEKSKILL CITY SCHOOL DISTRICT,

*Plaintiff-Appellant,*

– v. –

COLONIAL SURETY COMPANY,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK, 1:11-CV-341
HONORABLE SIDNEY H. STEIN, U.S.D.J.

## BRIEF ON BEHALF OF DEFENDANT-APPELLEE COLONIAL SURETY COMPANY

MCELROY DEUTSCH MULVANEY
& CARPENTER LLP
*Attorneys for Defendant-Appellee
Colonial Surety Company*
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07960
(973) 993-8100

*On the Brief:*
ADAM R. SCHWARTZ, ESQ.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Colonial Surety Company has the following parent corporations, subsidiaries not wholly owned, and publicly held companies that own 10% or more of its stock:

**NONE**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**.................................................................................. iv

**STATEMENT OF ISSUES** ................................................................................. 1

**STATEMENT OF THE CASE** ........................................................................... 2

    A.    The Project and The Bond.....................................................................2

    B.    All Phase's Default................................................................................2

    C.    The PCSD's Rejection of Colonial's Offer to Perform.........................3

    D.    The PCSD's Failure to Comply with the Statute of Limitations...........5

**SUMMARY OF ARGUMENT** ........................................................................... 6

**STANDARD OF REVIEW**...................................................................................9

**ARGUMENT** ...................................................................................................... 11

Point I:    The PCSD's Claims Are Barred By The Limitations Clause In
             The Bond...............................................................................................11

    A.    The Bond's Two-Year Limitation Provision Bars The
             PCSD's Claims.......................................................................11

    B.    There is no Basis Upon Which the Statute of
             Limitations May Be Tolled......................................................12

Point II:    The PCSD's Newly-Raised Claim Regarding The Application
             Of A Six-Year Statute of Limitations Should Not Be
             Considered By This Court......................................................................19

    A.    The PCSD May Not Raise this New Claim for the
             First Time on Appeal...............................................................19

B.     The PCSD's Complaint was Correctly Dismissed in its Entirety....................................................................................22

Point III:     The PCSD's Claims Are Also Barred By Its Breach Of Its Obligations Under The Bond...............................................................25

Point IV:     Colonial Is Not Liable For The Claims Assigned By Andron And Gisolfi To The PCSD Under "Liquidating Agreements" Because Andron and Gisolfi Have No Rights Under The Bond........29

**CONCLUSION** ................................................................................................... 32

**CERTIFICATION OF BAR MEMBERSHIP** ................................................. 33

**CERTIFICATION OF COMPLIANCE WITH RULE 32(a)(7)**.................... 34

**CERTIFICATION OF VIRAL CHECK**.......................................................... 35

**CERTIFICATION OF SERVICE** ................................................................... 36

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

120 Greenwich Development Associates, LLC v. Reliance
Insurance Co.,
2004 WL 1277998 (S.D.N.Y. 2004).................................................................25

Aetna Life Ins. Co. of Hartford, Conn. V. Haworth,
300 U.S. 227, 57 S. Ct. 461, 81 L.Ed. 617 (1937)...........................................14

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 251-252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)............9

Ashford Finance LLC v. Anhui Tech. Import & Export Co.,
2010 WL 4450910, *1-2 (S.D.N.Y. Oct. 22, 2010).........................................15

Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield,
448 F. 3d 573, 580 (2d Cir. 2006)....................................................................10

Boos v. Runyon,
201 F.3d 178, 184-85 (2d Cir. 2000).................................................................13

Boretsky v. N.Y. City Transit Auth.,
2013 WL 6116860, *1 (E.D.N.Y. Nov. 20, 2013)...........................................16

Celotex Corp. v. Catrett,
477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265  (1986)...................9

Chapman v. ChoiceCare Long Island Term Disability Plan,
288 F.3d 362, 367-68 (2d Cir. 2002).................................................................13

Fidelity & Deposit Company of Maryland v. Jefferson County
Commission,
756 F. Supp. 2d 1329, 1334, 1338 (N.D. Ala. 2010).......................................27

Garita Hotel Ltd. v. Ponce Federal Bank, F.S.B.,
958 F.2d 15, 18-19 (1st Cir. 1992)....................................................................16

Gazza v. United Cal. Bank Int'l,
88 A.D.2d 968 (N.Y. App. Div. 1982)..........................................................16,17

Gov't Employees Ins. Co. v. United States,
2014 WL 582164, *4 (E.D.N.Y. Feb. 14, 2014)...............................................13

Harris v. U.S. Liability Ins. Co.,
746 F.2d 152 (2d Cir. 1984).............................................................................14

Hirschfeld v. Spanakos,
104 F. 3d 18, 19 (2d Cir. 1997).........................................................................10

Hormel v. Helvering,
312 U.S. 552, 556, 61 S. Ct. 719, 85 L.Ed.1037 (1941)...................................19

Int'l Fidelity Ins. Co. v. County of Rockland,
98 F. Supp. 2d 400 (S.D.N.Y. 2000)..............................................................22,23

Int'l Longshoremen's Ass'n v. Seatrain Lines, Inc.,
326 F.2d 916 (2d Cir. 1964).............................................................................14

Johnson v. Nyack Hospital,
86 F.3d 8, 13 (2d Cir. 1996)............................................................................12

Leecan v. Lopes,
893 F. 2d 1434, 1439 (2d Cir.), *cert. denied*, 496 U.S. 929,
110 S. Ct. 2627, 110 L. Ed. 2d 647 (1990).....................................................10,25

Logan v. North-West Ins. Co.,
724 P.2d 1059 (Wash. Ct. App. 1986)............................................................17,18

Schmidt v. Polish People's Republic,
742 F.2d 67, 70 (2d Cir. 1983).......................................................................19,20,21,22

Sims v. Union News Co.,
120 F. Supp. 116, 117 (S.D.N.Y. 1954)...........................................................15

Smith v. McGinnis,
208 F.3d 13, 17 (2d Cir.), cert. denied, 531 U.S. 840 (2000)..........................12

Spraggins v. Current Cab Corporation,
1985 WL 1623, *1 (S.D.N.Y. June 13, 1985)...................................................15

St. Paul Fire and Marine Insurance Co. v. City of Green River,
93 F. Supp. 2d 1170, 1178 (D. Wyo. 2000), aff'd 6 Fed. Appx.
828 (10th Cir. 2001)...........................................................................25,26,27,28

St. Paul Fire and Marine Insurance Co. v. VDE Corp.,
603 F. 3d. 119 (1st Cir. 2010).........................................................26,27,28

Terildsen v. Waters,
481 F.2d 201 (2d Cir. 1973)...........................................................19

Thorpe v. Scarne,
599 F. 2d 1169, 1171 (2d Cir. 1979)..............................................15,16

Travelers  Casualty & Surety Co. v. Dormitory Auth., State of N.Y.,
735 F. Supp. 2d 42, 80-81 (S.D.N.Y. 2010)....................................23

Travelers Casualty and Surety Company v. White Plains Public
Schools,
2007 WL 935612, *20 (S.D.N.Y. Jan. 26, 2007)............................29,30,31

United States v. Greater Blouse, Skirt & Neckwear Contractors Assn.,
35 F.R.D. 130 (S.D.N.Y. 1964)......................................................15

United States v. Vitasafe Corp.,
352 F.2d 62 (2d Cir. 1973).............................................................19

Veltri v. Building Service 32B-J Pension Fund,
393 F.3d 318, 322 (2d Cir. 2004)...................................................12,13

Virgin Atl. Airways Ltd. v. British Airways PLC,
257 F.3d 256, 273 (2d Cir. 2001)...................................................9

VKK Corp. v. Nat'l Football League,
244 F.3d 114, 118 (2d Cir. 2001)...................................................9

Wolters Kluwer Financial Services, Inc. v. Scinvintage,
564 F.3d 110, 114 (2d Cir.2009)....................................................16

Zerilli-Edelglass v. N.Y. City Transit Auth.,
333 F.3d 74, 80-81 (2d Cir. 2003)..................................................13

## RULES

Fed. R. Civ. P. 41(a)...................................................................................16

Fed. R. Civ. P. 41(a)(1)(A)(i).......................................................................16

Fed. R. Civ. P. 56(c).....................................................................................9

Fed. R. Civ. P. 56(e).....................................................................................9

Fed. R. Civ. P. 60(b)...................................................................................16

## STATEMENT OF ISSUES

1.   Did the court below correctly determine that the PCSD's claims against Colonial were barred by the PCSD's failure to commence its action within the two-year statute of limitations set forth in the bond issued by Colonial?

2.   Did the PCSD's rejection of Colonial's offer to perform under the bond discharge Colonial's obligations under the bond?

3.   Is the PCSD's claim that Colonial is liable for claims assigned by the PCSD's construction manager and architect barred as a matter of law?

**STATEMENT OF THE CASE**

### A.  The Project and The Bond

On or about February 15, 2006, Appellant Peekskill City School District (the "PCSD") entered into a contract ("Contract") with All Phase Electric Corporation ("All Phase"), pursuant to which All Phase agreed to act as the prime contractor for electrical work in connection with the construction of a new middle school (the "Project").  Appendix ("A") 13-33.  Appellee Colonial Surety Company ("Colonial") issued a performance bond (the "Bond") on behalf of All Phase, as principal, and for the benefit of the PCSD, as obligee, in connection with the Project.  [A34-37].  The Bond was issued on an industry-standard form developed by the American Institute of Architects, known as the "A312" form.  [A34-37].

### B.  All Phase's Default

All Phase commenced its work on the Project in March 2006, and continued to work on the Project until June 6, 2008, when All Phase filed a petition for bankruptcy in the United States Bankruptcy Court for the District of Connecticut. [A39, 129].  It is undisputed that All Phase performed no further work on the Project subsequent to its June 6, 2008 bankruptcy filing.  [A631].

On September 9, 2008, the bankruptcy court granted relief from the automatic stay to allow the PCSD to terminate its Contract with All Phase, which the PCSD terminated on September 17, 2008.  [A52-56].

2

C.    **The PCSD's Rejection of Colonial's Offer to Perform**

Subsequent to the PCSD's termination of the Contract, Colonial offered to proceed under Paragraph 4.2 of the Bond, which provided that Colonial could "complete the Construction Contract itself, through its agents or through independent contractors."  [A35].  On September 10, 2008, Colonial notified the PCSD that RLJ Electric Corporation ("RLJ"), an independent contractor, was immediately available to start work on the Project.  [A59, 78].  The PCSD, by and through its Assistant Superintendent for Business and Administrative Services, Greg Sullivan, solicited information about RLJ from colleagues working for other nearby school districts, receiving at least one negative review of RLJ.  [A47-48].  By way of letter dated September 15, 2008, the PCSD notified Colonial that "the [PCSD's] due diligence with respect to RLJ, the tentative replacement electrical contractor, has to date not been positive."  [A87].

By way of letter dated September 17, 2008, the PCSD notified Colonial that:

> [The PCSD] has completed its due diligence investigation regarding RLJ Electric Corporation, [Colonial's] suggested replacement contractor.  Unfortunately, [the PCSD] cannot accept RLJ Electric Corporation as a replacement contractor based upon the same.  Kindly furnish me with the name of a different replacement contractor for review.

[A88] (emphasis added).[1]    Immediately thereafter, the PCSD, through its

---

[1] The PCSD rejected Colonial's offer of RLJ, and raised no objection to utilizing a takeover agreement, had the parties come to an agreeement.  The very letter by

3

Superintendent, Judith Johnson, advised Colonial's President, Wayne Nunziata, that the PCSD's rejection of Colonial's offer to complete the Contract through its independent contractor, RLJ, was "firm." [A61].

In response to the PCSD's rejection of Colonial's offer to perform under the Bond, by letter dated September 29, 2008, Colonial notified the PCSD that, Colonial's obligations under the Bond were discharged as a result of the PCSD's rejection of Colonial's completion contractor, which constituted a material breach of the Bond. [A97]. Following the PCSD's breach of the Bond, Colonial and the PCSD attempted to settle the matter[2]; however, the parties never reached an agreement to resolve the dispute. See [A328-31]. Following the PCSD's breach of the Bond, the PCSD entered into Liquidating Agreements (the "Liquidating Agreements") with its construction manager, Andron, and its architect, Gisolfi, pursuant to which Andron and Gisolfi assigned their respective claims for additional costs and expenses relating to the Project to the PCSD, and the PCSD agreed to pursue such claims against Colonial. [A159-69; 170-79].

which the PCSD's counsel communicated its rejection of RLJ, in fact, states that "my client appreciates your prompt provision of a draft takeover agreement with respect to the above matter." [A88].

[2] These settlement discussions were "a good faith attempt to resolve the parties' disputes," without waiver of Colonial's position that the PCSD "has breached the bond by rejecting RLJ as the completion contractor," and do not undo the fact that the PCSD had materially breached the Bond. See [A369]; see also [A241] (PCSD stipulating to the continuing settlement discussions in its Counterstatement of Material Facts before the trial court).

**D.     The PCSD's Failure to Comply with the Statute of
Limitations**

On October 3, 2008, Colonial filed a Complaint for Declaratory Judgment in
the United States District Court for the Southern District of New York (the "First
Lawsuit"), seeking a declaration that Colonial's obligations under the Bond were
fully discharged.  [A103-17].  In lieu of answering or otherwise pleading, the
PCSD filed a motion to dismiss (the "Motion to Dismiss") Colonial's Complaint.
[A118-20].  The PCSD sought dismissal on the ground that a forum selection
clause deprived the court of subject matter jurisdiction and venue and also
implicated the doctrine of *forum non conveniens*.  [A118-20].  The PCSD's Motion
to Dismiss was briefed by both parties, and argument scheduled for January 5,
2011.  [A124].

On January 5, 2011, Colonial voluntarily dismissed the First Lawsuit.
[A125].  At the time of Colonial's voluntary dismissal, the PCSD had not filed any
counterclaims against Colonial, nor had the PCSD instituted any other action
against Colonial.  [A121-25].  With the First Lawsuit dismissed, the PCSD was in
precisely the same position it sought in having filed its motion to dismiss.

On January 18, 2011, the PCSD commenced the instant action (the "Second
Lawsuit") against Colonial, which was the first and only proceeding instituted by
the PCSD against Colonial in connection with the Bond.  [A125-33].  At the close
of discovery, Colonial filed a motion for summary judgment, seeking the dismissal

of all claims asserted by the PCSD in the Second Lawsuit. [A7] (Colonial's notice of motion stating that Colonial moved "for summary judgment in its favor and against [the PCSD] on all counts of the [PCSD's] Complaint" (emphasis added)).

In an Opinion & Order dated March 18, 2011 (the "Opinion and Order"), the Hon. Sidney H. Stein, U.S.D.J., granted Colonial's motion for summary judgment, holding that the PCSD's claims against Colonial are barred by the two-year statute of limitations in the Bond, the only limitations period that either party argued before the trial court was applicable to the PCSD's claims.[3] [A627-637]. On March 25, 2014, consistent with Judge Stein's Opinion and Order, Judgment was entered against the PCSD, dismissing all of the PCSD's claims against Colonial. [A638-39].

## SUMMARY OF ARGUMENT

The trial court properly enforced the two-year statute of limitations set forth in the Bond, and dismissed the PCSD's claims against Colonial as time-barred.

---

[3] Paragraph 9 of the Bond provides that:

> Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first.

[A35].

6

Although the Bond required that the PCSD institute a proceeding within two years of the earlier of All Phase's default or cessation of work on the Project, the PCSD did not assert its claims against Colonial until more than two-and-a-half years thereafter. Accordingly, the trial court correctly held that, absent any basis for tolling, the PCSD's complaint in this action was precluded pursuant to the Bond's limitation provision.

There is no basis upon which the two-year statute of limitations may be tolled, as the PCSD failed to act with reasonable diligence during the time period which it seeks to have tolled, and there exist no "extraordinary circumstances" necessitating the application of this rarely-implicated doctrine. The PCSD had ample opportunity to assert its claims against Colonial, either by way of filing a counterclaim in the First Lawsuit or by commencing a separate action; however, the PCSD made the strategic decision to file a motion to dismiss the First Lawsuit and sit on its rights until after the statute of limitations had expired and the First Lawsuit had been dismissed. This rather ordinary circumstance falls far short of meeting the PCSD's burden to prove that the doctrine of equitable tolling should apply. As such, this Court should affirm the trial court's entry of judgment on the ground that the two-year statute of limitations bars the PCSD's action, and the doctrine of equitable tolling does not apply.

This Court should decline to consider the PCSD's argument, raised for the first time on appeal, that a six-year statute of limitations applies. Having argued before the trial court that the Bond's two-year limitations period applies to its claims, the PCSD is precluded from arguing before this Court that a six-year statute of limitations is now applicable. Even if this Court were to consider this belated argument, it must nevertheless affirm the trial court's decision because the only statute of limitations applicable to the PCSD's claims is that which is set forth in the Bond, as Colonial and the PCSD never entered into any other agreement.

This Court should further affirm the trial court's entry of judgment in favor of Colonial on the ground that Colonial's obligations under the Bond were discharged as a result of the PCSD's material breach of the Bond. The PCSD's rejection of Colonial's proposed completion contractor constituted a material breach of the Bond, which discharged Colonial's obligations thereunder.

Lastly, the trial court's decision should be further affirmed because the PCSD cannot assert against Colonial any claim by the PCSD's construction manager or architect, as those parties possess no rights against Colonial.

## <u>STANDARD OF REVIEW</u>

This Court is to review a "district court's grant of a motion for summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party." <u>VKK Corp. v. Nat'l Football League</u>, 244 F.3d 114, 118 (2d Cir. 2001). Summary judgment should be granted where on a review of the evidence "there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Virgin Atl. Airways Ltd. v. British Airways PLC</u>, 257 F.3d 256, 273 (2d Cir. 2001). In ruling on a motion for summary judgment, a court should determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-252, 106 S. Ct. 2505, 2512. 91 L.Ed.2d 202 (1986). Summary judgment shall be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case in which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, when a motion for summary judgment is made and supported, the party opposing the motion has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed. R. Civ. P. 56(e).

"Questions of law or mixed questions of fact and law" are also "reviewed *de*

9

*novo*.  <u>Hirschfeld v. Spanakos</u>, 104 F. 3d 18, 19 (2d Cir. 1997).  This Court may 'affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied.'  <u>Leecan v. Lopes</u>, 893 F. 2d 1434, 1439 (2d Cir.), *cert. denied*, 496 U.S. 929, 110 S. Ct. 2627, 110 L. Ed. 2d 647 (1990)."  <u>Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield</u>, 448 F. 3d 573, 580 (2d Cir. 2006).

**ARGUMENT**

**POINT I**

**THE PCSD'S CLAIMS ARE BARRED BY THE
LIMITATIONS CLAUSE IN THE BOND**

**A.     The Bond's Two-Year Limitation Provision Bars the PCSD's
Claims**

The trial court properly enforced the clear terms of the Bond, which require

that "[a]ny proceeding . . . under this Bond . . . shall be instituted within two years

after Contractor default or within two years after the Contractor ceased working[,] .

. . whichever occurs first," and held that the PCSD's claims against Colonial,

which were first asserted against Colonial two years, seven months and twelve

days after All Phase defaulted and ceased work on the Project, were time-barred

under the applicable statute of limitations.   [A627-37; A35].   In reaching its

decision, the trial court observed that both parties agreed that: (i) the Bond's two-

year limitation provision is enforceable; (ii) the limitation period began to run on

June 6, 2008, the date on which All Phase ceased working on the Project[4]; (iii) the

PCSD's action is a "proceeding . . . under th[e] Bond," and thus the claims asserted

by the PCSD in this action are subject to the two-year statute of limitations

---

[4] Even if the limitation period ran from the date on which Colonial notified the
PCSD that its obligations under the Bond were discharged due to the PCSD's
material breach (September 29, 2008) – which it does not – the PCSD's action
against Colonial would <u>still</u> be time-barred pursuant to the Bond's two-year statute
of limitations.

11

prescribed in the Bond; and (iv) the PCSD's claims against Colonial in this action are time-barred, absent any basis upon which such claims may be tolled.  [A630-31].

**B.     There is no Basis Upon Which the Statute of Limitations May Be Tolled**

The PCSD contends that the limitations period should have been tolled during the pendency of the First Lawsuit.  The PCSD ignores that: (i) in lieu of answering and asserting a counter-claim against Colonial in the First Lawsuit, the PCSD and its counsel made the strategic decision to instead file a motion to dismiss the First Lawsuit; (ii) at no time during the pendency of the PCSD's motion to dismiss did the PCSD assert any claims against Colonial, either in the First Lawsuit or in any other action; and (iii) the PCSD received the exact relief it sought in filing its motion to dismiss – the dismissal of the First Lawsuit.  The court below correctly rejected the PCSD's argument, and found no basis upon which to relieve the PCSD from its "self-inflicted wound."  Johnson v. Nyack Hospital, 86 F.3d 8, 13 (2d Cir. 1996) (internal quotations omitted).

Federal courts apply equitable tolling only in "rare and exceptional circumstance[s]," and require that the party seeking the tolling of a statute of limitations establish that "extraordinary circumstances prevented [it] from filing [its claims] on time."  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.), cert. denied, 531 U.S. 840 (2000) (internal quotations omitted); see also Veltri v. Building

12

Service 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004) (stating that "[e]quitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances"); Gov't Employees Ins. Co. v. United States, 2014 WL 582164, *4 (E.D.N.Y. Feb. 14, 2014) ("Only in a limited number of cases do extraordinary circumstances exist such that equitable tolling is warranted.").

　　"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine: (1) has 'acted with reasonable diligence during the time period [the plaintiff] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 362, 367-68 (2d Cir. 2002)). The "'burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff.'" Gov't Employees Ins. Co., 2014 WL 582164 at *4 (quoting Boos v. Runyon, 201 F.3d 178, 184-85 (2d Cir. 2000)) (alteration in original). The PCSD falls far short of its burden of establishing both that it acted with reasonable diligence during the period for which the PCSD seeks to have tolled and that any "extraordinary circumstances" prevented the PCSD from timely instituting its

13

claims under the Bond.[5]

In rejecting the PCSD's allegations regarding the application of the doctrine of equitable tolling, the trial court observed that the PCSD failed to act with reasonable diligence during the time period it seeks to have tolled:

> [The PCSD] could have preserved its claims against Colonial in the [First Lawsuit] notwithstanding the fact that that action was voluntarily withdrawn prior to that court ruling on [the PCSD's] motion to dismiss. All [the PCSD] had to do was serve an answer containing both its defenses and its counterclaims within the limitations period set forth in the [Bond]. . . . Alternatively, [the PCSD] could have commenced *this* action within the two-year limitations period of the [Bond].

[A633] (emphasis in original). Furthermore, the PCSD never challenged Colonial's dismissal of the First Lawsuit, which occurred on January 5, 2011, until it asserted its belated tolling argument in its brief in opposition to Colonial's motion for summary judgment in this action, on March 22, 2013. [A636]. The record clearly shows that, not only did the PCSD fail to act with the "reasonable

---

[5] The cases cited by the PCSD have no bearing on the issues before this Court. See, e.g., Aetna Life Ins. Co. of Hartford, Conn. V. Haworth, 300 U.S. 227, 57 S. Ct. 461, 81 L.Ed. 617 (1937) (holding that an insurer's declaratory judgment action is a "case[] of actual controversy" for purposes of conferring jurisdiction under a federal district court under the Declaratory Judgment Act of 1934). Int'l Longshoremen's Ass'n v. Seatrain Lines, Inc., 326 F.2d 916 (2d Cir. 1964) (holding that a labor union's declaratory judgment action seeking a declaration of parties' rights under Section 302 of the Labor Management Relations Act constitutes a "justiciable controversy"); Harris v. U.S. Liability Ins. Co., 746 F.2d 152 (2d Cir. 1984) (holding that, pursuant to New York court rule, plaintiff may institute second lawsuit following court's dismissal of plaintiff's own previously-filed declaratory judgment action).

diligence" required to invoke equitable tolling, it exercised absolutely *no* diligence in attempting to maintain its claims against Colonial.

The trial court held that the PCSD "cites no authority for the proposition that however erroneous the prior dismissal was, [the court below] has the power to provide [the PCSD] a remedy in the form of tolling of its otherwise time-barred claims." [A636]. The authority is clear that the PCSD could have filed a motion to vacate the voluntary dismissal of the First Lawsuit. <u>See Ashford Finance LLC v. Anhui Tech. Import & Export Co.</u>, 2010 WL 4450910, *1-2 (S.D.N.Y. Oct. 22, 2010) (denying defendant's motion to vacate plaintiff's notice of voluntary dismissal); <u>Spraggins v. Current Cab Corporation</u>, 1985 WL 1623, *1 (S.D.N.Y. June 13, 1985) (defendant's motion to vacate plaintiff's voluntary dismissal denied); <u>United States v. Greater Blouse, Skirt & Neckwear Contractors Assn.</u>, 35 F.R.D. 130 (S.D.N.Y. 1964) (defendant's motion to vacate plaintiff's voluntary dismissal denied because "plaintiff was entirely within its rights in filing the voluntary dismissal under the Rule"); <u>Sims v. Union News Co.</u>, 120 F. Supp. 116, 117 (S.D.N.Y. 1954) (defendant's motion to vacate plaintiff's voluntary dismissal granted because notice of dismissal was filed after case had been transferred to another jurisdiction); <u>see also</u> <u>Thorp v. Scarne</u>, 599 F. 2d 1169, 1171 (2d Cir. 1979) (appeal following trial court's grant of defendants' motion to vacate notice of dismissal). The PCSD could have also challenged the voluntary dismissal under

Rule 60(b).  <u>See</u>, <u>e.g.</u>, <u>Boretsky v. N.Y. City Transit Auth.</u>, 2013 WL 6116860, *1 (E.D.N.Y. Nov. 20, 2013) (plaintiff's declaration that case he had agreed to dismiss was "reopened" treated "as a motion under Federal Rule of Civil Procedure 60(b) to vacate the stipulation of voluntary dismissal and reopen the case").[6]

The circumstances under which the PCSD failed to timely assert its claims were rather ordinary, as New York courts have previously rejected a virtually identical tolling argument under very similar circumstances.  In <u>Gazza v. United Cal. Bank Int'l</u>, 88 A.D.2d 968 (N.Y. App. Div. 1982), properly relied upon by the court below, debtors commenced a declaratory judgment proceeding against a bank, which answered the declaratory complaint but never asserted any counterclaims.  Then, after the applicable statute of limitations had expired, the

---

[6] In addition to having failed to challenge the dismissal in the First Lawsuit, it is undisputed that the dismissal was made pursuant to Rule 41(a).  Rule 41(a)(1)(A)(i) permits a plaintiff to "dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A)(i).  The PCSD cannot point to anything in the record to show that it ever served "an answer or a motion for summary judgment" in the First Lawsuit.  <u>See</u> <u>Wolters Kluwer Financial Services, Inc. v. Scinvintage</u>, 564 F.3d 110, 114 (2d Cir.2009) ("With regard to the Rule 41 dismissal, a plaintiff who has not been served with an answer or motion for summary judgment has an 'unfettered right voluntarily and unilaterally to dismiss an action.'") (quoting <u>Thorp v. Scarne</u>, 599 F.2d 1169, 1175 (2d Cir. 1979)); <u>see also</u> <u>Garita Hotel Ltd. v. Ponce Federal Bank, F.S.B.</u>, 958 F.2d 15, 18-19 (1st Cir. 1992) (stating that a "motion to dismiss is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed," and clarifying that the critical question is "whether the court actually took cognizance of them").

bank commenced a separate action against the debtors, much like the PCSD did, here. Id. at 969. The Gazza court properly rejected the bank's tolling argument, and held that the bank's untimely action was barred by the statute of limitations. Id. at 970.

Other cases are instructive. See Logan v. North-West Ins. Co., 724 P.2d 1059 (Wash. Ct. App. 1986) (holding that insured's complaint against insurer was barred by policy's statute of limitations). In Logan, the insured submitted a proof of loss with its insurer following a fire. Logan, 724 P.2d at 1060. Shortly thereafter, the insurer filed a declaratory judgment action against the insured, seeking a declaration of the parties' rights under the policy. Id. The insured failed to file a responsive pleading, and the declaratory judgment action was dismissed without prejudice for want of prosecution. Id. at 1060-61. Several years later, the insured filed a complaint against the insurer, and the insurer responded by filing a motion for summary judgment on the ground that the policy's one-year statute of limitations barred the insured's action. Id. at 1061. The Logan court held that the trial court properly dismissed the insured's complaint, rejecting the insured's contention that the insurer's declaratory judgment action tolled the statute of limitations and holding that "a declaratory judgment action brought by the insurer is not an action for the recovery of a claim under the 1-year limitation clause." Id.

Similarly, here, Colonial's declaratory judgment action was not a

"proceeding . . . under th[e] Bond" capable of tolling the two-year statute of limitations. Once the First Lawsuit was dismissed, accomplishing the relief sought by the PCSD in its motion to dismiss in the First Lawsuit, without the PCSD having asserted a counterclaim therein, the Bond's two-year statute of limitations was properly deemed by the trial court to have continued to run as though the First Lawsuit had never been brought. See Logan, 724 P.2d at 1062 (stating that "[w]here an original action is dismissed, a statute of limitations is deemed to continue to run as though the action had never been brought").

The PCSD's only reason for failing to comply with the applicable statute of limitations is its own failure to act with reasonable diligence. There is nothing "extraordinary" about that. The PCSD made the strategic decision to seek dismissal of the First Lawsuit in lieu of asserting any claims against Colonial, either by counterclaim or otherwise. The PCSD received the exact relief it sought – the dismissal of the First Lawsuit. Accordingly, this Court should reject the PCSD's argument that its claims were tolled by the First Lawsuit. The trial court's decision should be affirmed.

**POINT II**

**THE PCSD'S NEWLY-RAISED CLAIM REGARDING THE
APPLICATION OF A SIX-YEAR STATUTE OF LIMITATIONS
SHOULD NOT BE CONSIDERED BY THIS COURT**

The PCSD argued below that the two-year statute of limitations applies to the PCSD's claims in this action. For the first time on appeal, the PCSD now contends that a six-year statute of limitations applies to certain of its claims. This argument fails for two reasons. First, this argument should not be considered on appeal because the PCSD failed to raise it before the trial court. Second, even if this Court considers this newly-raised argument, a six-year statute of limitations is inapplicable to the PCSD's claims.

**A. The PCSD May Not Raise this New Claim for the First Time on Appeal**

This Court follows the general rule that a "party may not raise claims on appeal which it failed to raise before the trial court." Schmidt v. Polish People's Republic, 742 F.2d 67, 70 (2d Cir. 1983) (citing Terildsen v. Waters, 481 F.2d 201 (2d Cir. 1973); United States v. Vitasafe Corp., 352 F.2d 62 (2d Cir. 1973)); see also Hormel v. Helvering, 312 U.S. 552, 556, 61 S. Ct. 719, 85 L.Ed.1037 (1941) (stating that an appellate court's refusal to consider issues not raised by a party below "is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be

19

surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence").  "This is true whether the appeal follows a full factual trial or whether the new appellate claim is a purely legal question following a summary dismissal . . . . While this bar is not absolute, it may be overcome only when necessary to avoid manifest injustice."  Schmidt, 742 F.2d at 69-70 (citations omitted).

This Court has specifically rejected a party's attempt, on appeal, to argue the application of a statute of limitations other than that which the party argued in favor of in the court below. See id. at 69-70.  In Schmidt, like here, the matter involved a motion seeking dismissal of the plaintiffs' claims on a limitations defense.  Id. at 69.  The trial court in Schmidt found the plaintiffs' claims to be time-barred under a New York statute of limitations, which was the only statute of limitations raised by the parties.  Id. at 70 (noting that trial court's decision provided that "[t]he parties agree that New York's six year statute of limitations governs this action" (alteration in original)).  On appeal, the plaintiffs asserted, for the first time, that their claims were actually governed by a Pennsylvania statute of limitations, under which such claims would not be time-barred.  Id.  This Court refused to permit the plaintiffs' "strategically motivated attack on a conclusion of the district judge which plaintiffs have heretofore encouraged," and held that "[t]his new claim cannot be asserted on appeal."  Id.

20

Here, in opposing Colonial's motion for summary judgment, the PCSD was well aware it was a motion seeking dismissal of all claims on a limitations defense.  Colonial's notice of motion explicitly provided that Colonial was seeking summary judgment "on <u>all counts</u> of the Plaintiff's Complaint," and Colonial's memorandum of law unequivocally moved for judgment on the ground that "[<u>a</u>]<u>ll</u> of the PCSD's claims are time barred under Paragraph 9 of the Bond."  [A7, 221] (emphasis added); <u>see also</u> [A218].   The PCSD never argued -- nor as set forth *infra,* Point II(B), *could* it -- that the statute of limitations governing the claims in the PCSD's complaint was anything other than the two-year limitations period set forth in the Bond.  <u>See</u>   Supplemental Appendix ("SA") at 8 (discussing "Colonial's keystone defense based on the statute of limitations"); [SA3] ("Colonial's motion, to the extent based on the statute of limitations should be denied") (emphasis omitted); [SA12] (arguing that "if the time from December 3, 2008 through January 5, 2011 is excluded from the time that <u>the two-year limitations period</u> in Colonial's Bond ran against PCSD, <u>the action at bar</u> was timely commenced") (emphasis added).   The PCSD cannot now raise a new, albeit flawed, claim that a six-year statute of limitations applies, when it failed to raise such a claim with the trial court.  <u>See</u> <u>Schmidt</u>, 742 F.2d at 70.

Moreover, the trial court recognized that "[t]he parties' memoranda of law make clear that several propositions are uncontested: . . . [the PCSD's] action is a

21

'proceeding . . . under th[e] Bond' and is thus subject to the two-year limitations period that the parties agreed to in the bond."  [A631] (fourth and fifth alterations added).    Here, "no potential injustice" would result from precluding the PCSD from asserting an entirely new argument on appeal, after the PCSD argued in the trial court that the Bond's two-year statute of limitations applies to its claims. See Schmidt, 742 F.2d at 70.

**B.    The PCSD's Complaint was Correctly Dismissed in its Entirety**

The PCSD's new argument – that certain of its claims are not governed by the two-year statute of limitations set forth in the Bond – has no basis in either fact or law.  Aside from the fact that it took the inconsistent position before the trial court that the Bond's two-year limitations period applies to its claims, the PCSD further ignores the fact that the only agreement governing the relationship between the PCSD and Colonial is the Bond.  There is no contention by the PCSD, nor can there be, that the PCSD and Colonial ever entered into any other agreement.

The PCSD's case law in support of the application of a purported six-year limitation (which argument it never raised to the trial court) is misplaced.  See Int'l Fidelity Ins. Co. v. County of Rockland, 98 F. Supp. 2d 400 (S.D.N.Y. 2000).  The Rockland case is easily distinguishable because that case was premised on the fact that, unlike here, the owner and the surety entered into a written takeover agreement regarding the completion of the project.  Rockland, 98 F. Supp. 2d at

22

407.

The <u>Rockland</u> court made clear its rationale:

> [The surety] and the [owner] came into privity under the Takeover Agreement, in which [the surety] agreed to take on the responsibilities of the Contractor under the original Construction Contract, and the [owner] may therefore bring an action for these damages against [the surety]. That action is, of necessity, a proceeding *under the Takeover Agreement*, for damages caused by [the surety's] delayed performance under that Agreement and the incorporated Construction Contract.

<u>Id.</u> at 422 (emphasis in original). The <u>Rockland</u> court went on to find that the owner's claims brought under the takeover agreement, executed by the owner and the surety, as opposed to the owner's claims under the bond, were subject to a six-year statute of limitations for breach of contract, in connection with the executed takeover agreement.[7] <u>Id.</u> at 425. No such privity exists here, as the PCSD and Colonial never entered into a takeover agreement, or any other agreement, for that matter. See <u>Travelers Casualty & Surety Co. v. Dormitory Auth., State of N.Y.,</u> 735 F. Supp. 2d 42, 80-81 (S.D.N.Y. 2010) (holding that surety's obligations are limited by the bond where surety did not go into privity of contract with owner). As such, <u>Rockland</u> provides no basis upon which the PCSD's claims may be governed by anything other than the statute of limitations set forth in the <u>only</u>

---

[7] Indeed, in contrast to claims brought under a written takeover agreement, the <u>Rockland</u> court recognized that the statute of limitations for claims under the bond would be two years, pursuant to Paragraph 9 of the A312 bond. <u>Rockland</u>, 98 F. Supp. 2d at 425.

contract governing the parties – the two-year statute of limitations in the Bond. The court below correctly dismissed the PCSD's complaint, in its entirety, for failure to comply with the applicable statute of limitations.

## POINT III

### THE PCSD'S CLAIMS ARE ALSO BARRED BY ITS
### BREACH OF ITS OBLIGATIONS UNDER THE BOND

This Court may "affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." Leecan v. Lopes, 893 F. 2d 1434, 1439 (2d Cir.), cert. denied, 496 U.S. 929 (1990). In addition to its limitations argument, Colonial also presented to the trial court an alternative ground on which the court could have entered judgment in Colonial's favor – that, by rejecting Colonial's proposed completion contractor, the PCSD breached its own duties under the Bond. [A223-26]. Having disposed of the PCSD's claims on statute of limitations grounds, the trial court did not reach this issue. [A637]. The PCSD's breach of the Bond provisions is an additional ground upon which this Court should affirm the trial court.

The PCSD's rejection of RLJ constituted a material breach of the Bond. "Courts have consistently held that an obligee's action that deprives a surety of its ability to protect itself pursuant to performance options granted under a performance bond constitutes a material breach, which renders the bond null and void." 120 Greenwich Development Associates, LLC v. Reliance Insurance Co., 2004 WL 1277998 (S.D.N.Y. 2004) (citing St. Paul Fire and Marine Insurance Co. v. City of Green River, 93 F. Supp. 2d 1170, 1178 (D. Wyo. 2000), aff'd 6 Fed. Appx. 828 (10th Cir. 2001)) (emphasis added).

25

The <u>Green River</u> case involved a performance bond identical to Colonial's Bond, which was issued by a surety in connection with a contractor's contract to build a water treatment plant, for the benefit of the plant's public owner. <u>Green River</u>, 93 F. Supp. 2d at 1173 (where, like here, following the default and termination of its principal, the surety offered to complete the contract under Paragraph 4.2 of an A31 bond). The surety elected to use employees of the contractor to finish the project, prompting the owner to notify the surety that it "does not consent" to the use of the contractor's employees. <u>Id.</u> The surety sought entry of declaratory judgment that the owner's rejection of the completion contractor "was a material breach of the performance bond, thus exonerating [the surety] from any further obligation under the bond." <u>Id.</u>

The <u>Green River</u> court noted that "it is clear that there are no limitations [under Paragraph 4.2] on who [the surety] could utilize to complete the [p]roject." <u>Id.</u> at 1777. That court concluded that the owner's prohibition of the surety's exercise of its rights under Paragraph 4 of the A312 bond "was a material breach, which discharged [the surety] from any further duty of performance under the bond." <u>Id.</u> at 1178-79.

The same result was reached by the First Circuit Court of Appeals in <u>St. Paul Fire and Marine Insurance Co. v. VDE Corp.</u>, 603 F. 3d. 119 (1st Cir. 2010). In <u>VDE Corp.</u>, the surety sought to utilize its defaulted contractor to complete the

26

remaining work, pursuant to Paragraph 4.2 of an A312 bond. The First Circuit affirmed the district court's holding that the owner "materially breached the bond by insisting that [the surety] could not use [its chosen contractor] as completion contractor under Paragraph 4.2," and that "[t]his breach discharged [the surety] from its obligations to perform under the bond." Id.at 125. See also Fidelity & Deposit Company of Maryland v. Jefferson County Commission, 756 F. Supp. 2d 1329, 1334, 1338 (N.D. Ala. 2010) (holding that owner "breached the terms of the bond" and was thus "not entitled to any relief" thereunder, where owner notified surety that proposed use of defaulted contractor to complete work was "unacceptable").

Like the owners in Green River and VDE Corp., the PCSD breached the terms of the A312 Bond by rejecting Colonial's proposed completion contractor, RLJ, based upon purported financial concerns. Here, like Green River and VDE Corp., Colonial offered to proceed under Paragraph 4.2 of the A312 bond, which clearly and unequivocally provides the surety with authority to assemble a completion team, granting no right of approval to the owner.[8]  As such, Paragraph

---

[8] The PCSD interfered with Colonial's offer to proceed under Paragraph 4.2 of the Bond solely due to Colonial's choice of RLJ, and raised no objection to utilizing a draft takeover agreement.  The very letter by which the PCSD's counsel communicated its rejection of RLJ, in fact, states that "my client appreciates your prompt provision of a draft takeover agreement with respect to the above matter." [A88].  This contemporaneous evidence belies the PCSD's red herring argument regarding its unwillingness to consider a takeover agreement.

4.2 differs from the other remedy options set forth in the A312 Bond, most notably those in Paragraphs 4.1 and 4.3, which require owner consent.[9]

An owner's refusal to accept a surety's proposed completion contractor constitutes a material breach of the bond. See, e.g., Green River, 93 F. Supp. 2d at 1173; VDE Corp., 603 F. 3d. at 125. The PCSD's refusal to accept Colonial's offer to perform under Paragraph 4.2 of the Bond was a material breach of the Bond, and, as such, discharged Colonial's obligations thereunder. Accordingly, the decision of the trial court may be affirmed on the ground the PCSD breached its duties under the Bond.

---

[9] The text of the relevant portions of Paragraph 4 of the A312 bond form provides:

> 4      When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:
> 4.1    Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or
> 4.2    Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or
> 4.3    Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner . . .

[A35] (emphasis added).

28

## POINT IV

### COLONIAL IS NOT LIABLE FOR THE CLAIMS ASSIGNED BY ANDRON AND GISOLFI TO THE PCSD UNDER "LIQUIDATING AGREEMENTS" BECAUSE ANDRON AND GISOLFI HAVE NO RIGHTS UNDER THE BOND

Colonial also fully briefed, below, another argument that would entitle it to summary judgment on one of the PCSD's claims, on the ground that the PCSD, as an assignee of the Project's construction manager, Andron, and its architect, Gisolfi, under certain "liquidating agreements," cannot hold Colonial liable for damages incurred by Andron and Gisolfi. This is an additional ground upon which Colonial was entitled to summary judgment on this issue.

It is plain on the face of Colonial's Bond that Andron and Gisolfi have no rights under the Bond. Paragraph 7 of the Bond clearly states that only the PCSD has rights under the Bond, providing that "no right of action shall accrue on the Bond to any person or entity other than the Owner." [A35]. By reason of this clause alone, Andron and Gisolfi neither have a right of action nor are proper claimants under the Bond. This fatal flaw cannot be cured by the PCSD's liquidating agreements with Andron and Gisolfi, as Andron and Gilsolfi were not in a position to give the PSCD any rights under the Bond.

The Southern District of New York was presented with a similar situation in Travelers Casualty and Surety Company v. White Plains Public Schools, slip op.

29

no. 03-cv-8144 (S.D.N.Y. January 27, 2006). [A180] (where owner defaulted contractor and surety completed remaining work under Paragraph 4.2 of A312 bond). Following its completion of the project, the surety commenced an action against the owner, seeking recovery of sums due for the completion of the work. [A182]. The owner counterclaimed for delay damages, including damages it allegedly incurred under two "liquidating agreements" it entered into with the electrical and HVAC contractors on the project. Id. Pursuant to these liquidating agreements, which appear to have been substantially similar to the ones between the PCSD and Andron and Gisolfi,[10] the owner acknowledged its liability to its electrical and HVAC contractors for sums certain and promised to prosecute their claims against the surety. The contractors, for their part, agreed to accept in full satisfaction of their claims whatever amount the owner obtained from the surety. [A183-84].

The White Plains Public Schools court held that the owner's counterclaims for delay damages, brought "on behalf of" the other contractors, "are beyond the scope of the" bond. [A194-196] (holding that Paragraph 7 of the A312 bond "is inconsistent with an intention of the parties to the Bond that other prime contractors may sue on it," and that the surety "cannot be held liable for damages to nonparties to the [bond]"). The court, noting the "lack of privity" between the

---

[10] Present counsel for the PCSD was also counsel for the owner in White Plains Public Schools.

electrical and HVAC contractors "on the one hand, and the surety[,] . . . . on the other hand," held that "[t]he surety guaranteed [the contractor's] performance on a wholly separate prime contract. [The owner's] decision to execute these [liquidating] agreements does not automatically empower it to recover its payments as damages from a third party surety, which has only limited and very specifically delineated liability to [the owner], as set forth in the performance bond." [A194-95].

In a later decision in the same matter, the court confirmed that "the liabilities or provisional liabilities willingly incurred by [the owner] and asserted as pass-through claims owing to [the electrical and HVAC contractors] are unrecoverable from [the surety]." <u>Travelers Casualty and Surety Company v. White Plains Public Schools</u>, 2007 WL 935612, *20 (S.D.N.Y. Jan. 26, 2007). Colonial's obligation to the PCSD is similarly circumscribed and does not include obligations that the PCSD may choose to assume after Colonial issued the Bond with regard to claims by third parties who have no rights under the Bond. Accordingly, Colonial is entitled to a summary judgment on the PCSD's claims for "liquidating damages" on behalf of Andron and Gisolfi.

## CONCLUSION

The suit limitations clause of Colonial's Bond bars the PCSD's claims against Colonial. The PCSD never argued before the trial court that any other suit limitation applied to the claims it asserts in this action. In addition, the PCSD's breach of the Bond discharged Colonial's obligations thereunder. Finally, the PCSD's argument that Colonial has any obligation for claims assigned to the PCSD by a construction manager and architect is without merit. For all of these reasons, and those given above, the decision of the court below should be affirmed.

McElroy, Deutsch, Mulvaney & Carpenter, LLP
Attorneys for Defendant/Appellee
Colonial Surety Company


By:   */s/ Adam R. Schwartz*
       Adam R. Schwartz, Esq.

DATE: October 20, 2014

## CERTIFICATION OF BAR MEMBERSHIP

I, Adam R. Schwartz, Esq., of full age, being duly sworn according to law and upon my oath depose and say:

1.    I am an attorney at law of the State of New York and am a partner in the law firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for defendant/appellee Colonial Surety Company, in connection with the above matter.

2.    I hereby certify that I am admitted as a member of the bar of the United States Court of Appeals for the Second Circuit.

3.    I hereby certify that the forgoing statements made by me are true. I am aware that if any of the forgoing statements made by me are willfully false, I am subject to punishment.

*/s/ Adam R. Schwartz*
Adam R. Schwartz, Esq.

DATE: October 20, 2014

33

## <u>CERTIFICATION OF COMPLIANCE WITH RULE 32(a)(7)</u>

I, Adam R. Schwartz, Esq., of full age, being duly sworn according to law and upon my oath depose and say:

1.      I am an attorney at law of the State of New York and am a partner in the law firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for defendant/appellee, Colonial Surety Company, in connection with the above matter.

2.      Based upon the word count of the word processing system used to prepare the within brief, I hereby certify that the brief contains exactly 7,168 words commencing with the Statement of Issues on page 1 through and including the Conclusion on page 31.

3.      I hereby certify that the forgoing statements made by me are true.  I am aware that if any of the forgoing statements made by me are willfully false, I am subject to punishment.

                                        */s/ Adam R. Schwartz*_____
                                        Adam R. Schwartz, Esq.

DATE: October 20, 2014

## **CERTIFICATION OF VIRAL CHECK**

I, Adam R. Schwartz, Esq., of full age, being duly sworn according to law and upon my oath depose and say:

1.     I am an attorney at law of the State of New York and am a partner in the law firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for defendant/appellee, Colonial Surety Company, in connection with the above matter.

2.     I hereby certify that a virus check was performed via McAfee AntiVirus software program.

3.     I hereby certify that the forgoing statements made by me are true.  I am aware that if any of the forgoing statements made by me are willfully false, I am subject to punishment.


*/s/ Adam R. Schwartz*_____
Adam R. Schwartz, Esq.

DATE: October 20, 2014

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on October 20, 2014, I filed the foregoing Brief for Defendant/Appellee in PDF format to the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

<u>*/s/ Adam R. Schwartz*</u>
Adam R. Schwartz, Esq.

DATE: October 20, 2014